# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 10-882V
(To be Published)

* * * * * * * * * * * * * * * * * * * * * * * *
| | | |
|---|---|---|
| VALERIA WATSON, | * | |
| | * | Special Master Corcoran |
| Petitioners, | * | |
| | * | Dated: March 7, 2016 |
| v. | * | |
| | * | Attorney's Fees and Costs; |
| | * | Forum Rate; Excessive Billing; |
| SECRETARY OF HEALTH AND | * | Duplicative Billing; Billing for |
| HUMAN SERVICES, | * | Administrative Tasks |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Irving Gertel*, Kagan & Gertel, Brooklyn, NY, for Petitioner.

*Glenn MacLeod*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### ATTORNEY'S FEES AND COSTS DECISION[1]

On December 27, 2010, Valeria Watson filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] The case was settled over four years later. Petitioner now requests an award of attorney's fees and costs in the amount of approximately $43,000. Respondent has challenged the rates requested for Petitioner's counsel. As discussed below, I hereby grant in part and deny in part Petitioner's fees request, and award attorney's fees and costs in the total amount of $26,169.80.

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

I.      **PROCEDURAL HISTORY**

Ms. Watson's petition, filed in December of 2010, alleged that she suffered Guillain-Barré syndrome and/or Chronic Inflammatory Demyelinating Polyneuropathy as a result of her receipt of the trivalent influenza vaccine on or about September 21, 2009. Pet. The billing records submitted with Petitioner's Motion shed light on her counsel's actions during the procedural history of this matter.

   A.      **Pre-Filing History**

Ms. Watson retained Mr. Irving Gertel as counsel nearly five months prior to the date she filed her petition. Mot. for Attorney Fees [hereinafter "Mot."]. ECF No. 78. During that time, Mr. Gertel billed nearly 29 hours, the majority of which was spent meeting with Petitioner, reviewing medical records, and learning about the Vaccine Program. *Id*. at 4-5.

   B.      **Submission of Medical Records and Expert Reports**

Along with the Petition, Petitioner filed medical records and an expert report in support of her claim. Respondent subsequently filed a Rule 4(c) report (ECF No. 13) and her own expert report on August 18, 2011 (ECF No. 14), asserting that Ms. Watson's claim was not appropriate for compensation. Petitioner and Respondent both then filed supplemental expert reports on December 16, 2011, and March 16, 2012, respectively. ECF Nos. 18, 25. The special master presiding over the case[3] ordered Petitioner to file all outstanding medical records by August 31, 2012. ECF No. 26. Petitioner filed additional medical documentation in July of 2012 (ECF Nos. 27, 28) and also filed an affidavit from Petitioner on February 22, 2013. ECF Nos. 30, 31.

In early 2013, the Parties began to explore settlement. During that time, Respondent filed another supplemental expert report (ECF No. 33) along with a counter-offer. ECF No. 34. When the Parties failed to reach settlement, a 1.5 day entitlement hearing was set for October 23-24, 2013, and Petitioner was ordered to propose a deadline by which to file yet another expert report. ECF No. 36. Petitioner subsequently filed a plethora of medical records in the interim period, but missed her July 12, 2013, deadline to file a status report proposing a date by which to file another supplemental expert report. There is no evidence in the billing records that Petitioner's counsel made any attempt to identify and work with an expert during this time period. Mot. at 13.

Following Petitioner's status report, filed July 25, 2013 (ECF No. 48), the special master presiding over the case set the deadline for the supplemental expert report for October 15, 2013.

---

[3] Over the long life of this case, this matter has been transferred several times. Initially, it was under the purview of Special Master Millman. It was reassigned to Special Master Zane on March 16, 2011. ECF No. 7. Over two years later, it was reassigned to Special Master Hastings (ECF No. 50) for a brief time until it was ultimately reassigned to me on January 14, 2014. ECF No. 58.

Petitioner missed that deadline, and on October 22, 2013, Petitioner's deadline was extended to November 21, 2013. On November 14, 2013, Petitioner's counsel wrote the court and relayed that he had been unable to communicate with Petitioner, despite numerous attempts, and requested a stay of proceedings. ECF No. 53. The billing and procedural record does reflect that in October of 2013, Mr. Gertel sent numerous letters to Petitioner to establish contact, but there is no evidence of a response from Petitioner. Mot. at 14.

At that time, the special master responsible for the case extended Petitioner's deadline for a supplemental expert report to December 20, 2013. Again, Petitioner's counsel wrote the court on December 20, 2013 (the date of the deadline) advising that no further contact had been made. However, the billing records show that during the intervening time period, counsel had not attempted to contact Petitioner. Mot. at 14. The Special Master (presumably unaware of Mr. Gertel's lack of effort) then ordered Petitioner's counsel to file a status report addressing communication with Petitioner on or before February 14, 2014.

In January of 2014, the case was assigned to me. ECF No. 58. For the next 17 months, the case was characterized by delay after delay. Thus, on February 12, 2014, Petitioner's counsel advised that he was unable to communicate with Petitioner. ECF No. 60.[4] In that status report, Petitioner's counsel averred that his inability to speak with his client stemmed from her in-patient status. This was the first time Petitioner's counsel made such a claim, and it is unclear when Petitioner went into the hospital. But, this appears to have been a misrepresentation by Mr. Gertel.[5] The billing records show that he had at least one twenty-minute call with Petitioner during that time. Mot. at 14.

After a status conference in March of 2014, I ordered the parties to file a joint status report by May 5, 2014, on Petitioner's progress in completing a supplemental expert report, which Petitioner had had nearly a year to complete. ECF No. 62. The subsequently-filed status report, however, merely repeated Petitioner's counsel's previous claims that an inability to communicate with Petitioner had delayed preparation of the expert report. ECF No. 63. However, according to the billing records, in addition to the aforementioned example, Mr. Gertel had in fact communicated with Petitioner multiple times, including on February 12, 2014, and on April 17, 2014. Mot. at 15.

---

[4] It should be noted that the record does not detail when Ms. Watson went in and out of the hospital. According to the billing records Petitioner was "going into hospital" only as of August 8, 2014. Mot. at 14. There is no evidence in the record – absent Mr. Gertel's assertions – that she was an in-patient at any time prior to August of 2014. There is reference that Petitioner was in "S.C." in January of 2014, but the record does not define that term. *Id*. at 13.

[5] Notably, on December 20, 2013, the same day that Mr. Gertel represented an inability to contact Petitioner despite lack of effort, and the day of the special master's order, Mr. Gertel had a twenty minute telephone discussion with Petitioner. Mot. at 14.

### C. Settlement Discussions

Another status conference was set for June 17, 2014, at which time I reiterated my concerns about delays in the case and set a firm deadline for Petitioner's supplemental expert report of September 30, 2014. ECF No. 64. But that report was never filed, because the Parties began to talk settlement again. Accordingly, during a status conference on October 15, 2014, I ordered the Parties to request a 15-week order or file a stipulation of settlement on or before November 26, 2014. Otherwise, Respondent was ordered to file a motion for a ruling on the record. ECF No. 66.

Respondent did so on November 26, 2014. Mot. to Dismiss at 3-4 (ECF No. 67). Then, on December 3, 2014, the parties informed me that they anticipated completing a settlement agreement shortly, but were awaiting information pertaining to Petitioner's Medicaid lien. ECF No. 68. Allowing them some time to finish exploring settlement, I ordered Petitioner to respond to the Motion to Dismiss on or before January 16, 2015.

On January 15, 2015, the Parties filed a joint status report indicating that they had reached a tentative settlement in this case (ECF No. 71), and I issued a 15-week order that same day. ECF No. 72. The Parties subsequently filed a stipulation for an award on May 6, 2015. ECF No. 74. I adopted the Parties' stipulation in my decision (ECF No. 75) and judgment entered on June 16, 2015, awarding Petitioner a lump sum of $40,000.00. ECF No. 77.

### D. Fees Petition

Ms. Watson filed the present motion for reimbursement of attorney's fees and costs on November 10, 2015. *See generally* Mot. In it, she requests compensation in the amount of $41,340.00 for her attorney, Irving Gertel, Esq., based on a billing rate of $600/hour for 68.9 hours of work. Mot. at 1.

Petitioner has offered her counsel's billing record in support of the Motion. However, no other exhibits are offered in support of the Motion. It is unclear how Mr. Gertel derived the 68.9 hours requested because the submitted billing records indicate a total of 196 hours was billed to the matter. Mot. at 4-18. Petitioner has also not explained what hours of time billed are, or are not, included in this fees request. In addition to fees, Ms. Watson requests $1,500.00 in costs incurred in this case, including the filing fee, costs for obtaining medical records, and costs of making copies of said records. In total, Petitioner requests an award of $42,840.00.[6]

Respondent filed a brief opposition to Petitioner's Motion. ECF No. 79. Respondent objects to the $600/hour requested for Mr. Gertel as "unsubstantiated." *Id*. at 1. However,

---

[6] In compliance with General Order No. 9, Ms. Watson also represented that she did not personally incur any costs in proceeding with this claim.

4

Respondent ultimately defers to my discretion in adjudicating Petitioner's Motion, asserting in a footnote that Respondent's failure to raise specific objections is not "an agreement, admission, or concession by respondent." *Id*. at 1-2.

Petitioner did not thereafter file a reply. As such, Ms. Watson's application for attorney's fees and costs is now ready for adjudication.

## II.   ANALYSIS

### A.   General Principles Regarding Attorney's Fees and Costs Awards

Vaccine Program petitioners who receive compensation for their injuries are by statute entitled to an award of attorney's fees and costs. However, such fees and costs must be "reasonable." Section 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters have discretion in determining what a reasonable fees award is, and may reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

The special master is not obligated to evaluate a fees request on a line-by-line basis. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight per cent of the numbers of hours for which compensation was sought). Rather (as the United States Supreme Court instructs) when awarding attorney's fees special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011).

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348. This standard for calculating a fee award is considered applicable in most cases where a fees award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing

market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. den'd*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum in which the relevant court sits (Washington, DC for Vaccine Act cases); with some adjustment possible where an attorney's work was not performed in the forum. *Avera*, 515 F.3d at 1348.[7]

After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

Evaluating an attorney's fees application involves more than the mere performance of a mathematical calculation. In all stages of the lodestar calculation, I must determine if the fees applicant has established the reasonableness of the billing rate and work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.").[8] Quoting a decision by the United States Supreme Court, the Federal Circuit has characterized the contours of a reasonable fee request:

> The [trial forum] also should exclude from this initial fee calculation hours that were not "reasonably expended." . . . Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 433-34).

Petitioners bear the same reasonableness burden in seeking an award of costs. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). When petitioners fail to carry this burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of*

---

[7] There is also the *Davis* exception to the forum rule, which applies if the bulk of the attorney's work was performed outside of Washington, DC, in a location where prevailing rates are substantially lower or higher than the forum rate. *Avera*, 515 F.3d at 1349. As will be discussed further below, that exception is inapplicable herein.

[8] Although *Mares* did not interpret the Vaccine Act's fees provisions, other fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

*Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). This practice is consistent with how the Federal Circuit and the Court of Federal Claims (the courts responsible for reviewing the decisions of special masters) have interpreted other federal fee-shifting statutes. *See Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987) (interpreting the Equal Access to Justice Act); *Presault*, 52 Fed. Cl. at 679 (interpreting the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970).

### B.  Specific Issues Raised by Petitioner's Fees Application

There are two issues posed by Petitioner's Motion: (i) whether Mr. Gertel's proper hourly rate is $600/hour; and (ii) whether the hours billed by Mr. Gertel are reasonable.

#### 1.  Mr. Gertel's Proper Hourly Rate

Petitioner requests that Mr. Gertel receive an hourly rate of $600/hour, arguing that it reflects his "usual and customary billing rate," and that it is reasonable given that the hourly "going rate" in Brooklyn, where his office is located, averages between $750 to $1,000/hour. Mot. at 2. Her fee request asserts that Mr. Gertel has over forty years of general litigation experience. Mot. at 1.

This rate, however, is higher than what a similarly-situated attorney would receive under the "forum rate," which the Federal Circuit has held is the District of Columbia for Vaccine Program attorneys. *Avera,* 515 F.3d at 1349; *see also Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*). The decisions of other special masters have generally agreed on a range of proper forum rates for experienced attorneys. In *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979 (Fed. Cl. Spec. Mstr. June 12, 2009), for example, a special master found that a reasonable rate for experienced Vaccine Program attorneys from Washington, D.C. was $250 to $375/hour. 2009 WL 1838979, at *25. Another special master arrived at a similar range in *Rodriguez. Rodriguez*, 2009 WL 2568468, at *15 (reasonable hourly rate for attorneys with more than 20 years of experience, in addition to specific experience in the Vaccine Program, was $275 to $370/hour). Most recently, in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *14-15 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), Special Master Gowen determined that a range of $350 to $425/hour was a reasonable forum rate for attorneys with more than 20 years of general experience, with the higher end of the range reserved for those "with significant Vaccine Program experience who perform high quality legal work in vaccine cases." *McCulloch,* 2015 WL 5634323, at *19.

Accordingly, if the forum rate is applied, Mr. Gertel would be entitled to no more than (under the best circumstances) $425 an hour – significantly less than what he requests. There is an exception applicable to determining if the forum rate should apply – the "*Davis* exception" – that was adopted by the Federal Circuit from a D.C. Circuit case (*Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir.

1999)), but it applies only if the locus of the attorney's work occurs outside the forum, and where "there is a *very significant* difference in compensation favoring D.C." *Avera*, 515 F.3d at 1349 (*citing Davis*, 169 F.3d at 758 (emphasis in original)). Nevertheless, even though *Avera* did not explicitly address a situation where the local rate is substantially **higher** than the forum rate, other special masters have looked to *Davis* itself, which does speak to this issue, to see if a higher rate should be applied. *Rodriguez*, 2009 WL 2568468 at *10 (citing *Davis*, 169 F.3d at 758). As the *Rodriguez* decision observed, a higher rate is awarded under these circumstances when one or both of two factors is demonstrated: (i) the attorney possesses special expertise; or (ii) the party seeking fees was unable to find other representation. *Id*.

In this case, Petitioner has failed to provide evidence that either of these disjunctive factors are applicable to the present case. As a CM/ECF search reveals, this is only Mr. Gertel's second Vaccine Program case, and he therefore does not possess specialized expertise in this area. This conclusion is further bolstered by the billing records, which reveal that Mr. Gertel spent hours researching the Vaccine Program and its nuances. Mot. at 4-5. Petitioner has not otherwise provided evidence of Mr. Gertel's Vaccine Program expertise, or that she could find no other counsel to represent her in this matter. Petitioner has accordingly not established any grounds for awarding a rate higher than the forum rate. *Rodriguez*, 2009 WL 2568468, at *18 (refusing to award *Davis* exception to attorney seeking hourly rate exceeding forum rate).

To determine where in the aforementioned forum range Mr. Gertel's rate should fall, I look to other special masters' decisions regarding attorneys with comparable experience. *Rodriguez*, 632 F.3d at 1385 (a "reasonable" hourly rate is, at bottom, defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Because Petitioner cites to Mr. Gertel's New York City-region expertise and rates, a reasonable comparison is provided by the fee requests for the services of Mr. John McHugh, Esq. *Rodriguez*, 2009 WL 2568468, at *18. Mr. McHugh is a Manhattan-based lawyer with over 45 years of experience and has represented clients in approximately four dozen Vaccine Program cases. He was most recently awarded an hourly rate of $400/hour for work completed in 2014. *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, slip op. at 5 (Fed. Cl. Spec. Mstr. Feb. 3, 2016). Like Mr. McHugh, Mr. Gertel has decades of experience – but that is where the similarities between the two end, for Mr. Gertel has far more limited Vaccine Program experience.

After evaluation of all of the above, I conclude that the $600/hour rate requested by Petitioner is not appropriately awarded in this matter. Rather, I hereby determine that **$370/hour** is an appropriate rate for Mr. Gertel for work performed in 2015. This rate falls within the reasonable range of forum rates for attorneys with twenty or more years of general experience as determined by *McCulloch*, and fairly takes into account Mr. Gertel's career experience versus lack of specific Vaccine Program experience.

Petitioner offers nothing in her fees request to suggest these conclusions are in error. When determining the forum rate for lawyers of comparable skill, experience, and reputation, the parties typically provide objective evidence of market rates. *Dougherty v. Sec'y of Health & Human Servs.*, No. 05-700V, 2011 WL 5357816, at *6 (Fed. Cl. Spec. Mstr. Oct. 14, 2011).[9] Here, however, Petitioner conclusorily asserts what Mr. Gertel's customary rate is. Moreover, the rate which an attorney normally charges to clients outside of the Vaccine Program is not dispositive of the issue of an appropriate hourly rate for Vaccine Program services by that attorney. *Masias*, 2009 WL 1838979 at *11.

Having determined a proper forum rate for Mr. Gertel in the present year, I must now reduce that figure in order to take account of inflation. *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011) (appropriate rate for current work cannot be applied retroactively to work done in previous years, as doing so would effectively be the equivalent of charging the government interest). Employing the CPI Calculator,[10] Mr. Gertel's rate of $370/hour is hereby adjusted to $340/hour for 2010, $351/hour for work performed in 2011, $358/hour for work performed in 2012, $364/hour for work performed in 2013, and $370/hour in 2014.[11]

2. <u>The Reasonableness of Hours Billed by Mr. Gertel</u>

The second issue presented by Petitioner's fees request is whether all of the time billed to this matter should be included in the fees award. The records provided by Mr. Gertel reveal that he billed 196 hours to this case, but is requesting compensation for only 68.9 hours, providing no explanation for which time entries are included in the reduced sum. I must therefore evaluate if the reduced hours requested understate the sum to which Petitioner is actually entitled, or if they reflect a fair accounting of reasonable time billed to the matter.

From the time I was assigned this case, I detected instances in which counsel appeared not to be acting efficiently and diligently in performing work on this matter. Indeed, an analysis of the billing records, when compared to the procedural history, reveals numerous instances in which

---

[9] I can rely on my past experiences with attorneys when evaluating reasonable attorney fees. *Saxton*, 3 F.3d at 1519-20.

[10] The Bureau of Labor Statistics has a Consumer Price Index ("CPI") inflation calculator, which calculates the average CPI for a given calendar year. *CPI Inflation Calculator*, U.S. Bureau of Labor Statistics, http://www.bls.gov/data/inflation_calculator html (last updated April 15, 2014) ("CPI Calculator"); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 100 Fed. Cl. 750 (2011) (employing CPI calculator to determine whether cost of living had risen following the passage of the Equal Access to Justice Act).

[11] There was minimal inflation between 2014 and 2015 and $370 had essentially the same buying power in 2014 as it did in 2015.

Petitioner's counsel billed excessively.[12] But Petitioner requests only thirty-five percent (68.9 hours) of the total hours her counsel billed in this case. Such a reduction is consistent with my judgment as to what would reflect a reasonable fees award under the circumstances, and I commend Petitioner and her counsel for reducing the number of hours requested in advance.

I therefore find that Petitioner should be awarded for the requested 68.9 hours of Mr. Gertel's time spent on this matter. Because Petitioner has not broken down the hours by year performed, however, I am required to devise a formula for doing so, in order to ensure that the rate applied to the hours reflects my rate determination above. Petitioner's counsel billed 14% of his hours in 2010; 19% in 2011; 24% in 2012; 20% in 2013; 21% in 2014; and 2% in 2015. Mot. at 4-18. Applying these percentages to the 68.9 hours requested, I will award Mr. Gertel the hourly rates established above for 1.3 hours in 2015; 14.4 hours in 2014; 13.7 hours in 2013; 16.6 hours in 2012; 13.2 hours in 2011; and 9.7 hours in 2010.

## CONCLUSION

Based upon the above, and in the exercise of my discretion, I hereby award attorney's fees as follows: $481 for 2015 (1.3 hours at $370/hour); $5,328 for 2014 (14.4 hours at $370/hour); $4,986.80 for 2013 (13.7 hours at $364/hour); $5,942.80 in 2012 (16.6 hours at $358/hour); $4,633.20 in 2011 (13.2 hours at $351/hour); and $3,298 in 2010 (9.7 hours at $340/hour). The following chart sets forth the total calculation of Petitioner's fee award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Gertel's Fees | $41,340.00 | $16,670.20 | $24,669.80 |
| Costs Incurred | $1,500.00 | N/A | $1,500.00[13] |

I reduce Petitioner's fee application by the amount of $16,670.20 as a result of the reduction in rate and number of hours, thereby awarding Petitioner a total of $24,669.80 in attorney's fees,

---

[12] If Mr. Gertel had not preemptively reduced his hours, I would have cut hours from several areas (Mot. at 4-18) including, but not limited to: (i) the 41.5 hours of attorney time Mr. Gertel billed for tasks that required no legal skill and could have been more efficiently performed by secretaries (*see, e.g.*, Anderson v. Sec'y of Health & Human Servs., No. 06-168V, 2007 WL 4527545, at *2 (Fed. Cl. Spec. Mstr. Dec. 7, 2007) (refusing to award attorney fees incurred in tasks such as filing paperwork, mailing material, and traveling to file and filing motions); *Macrelli v. Sec'y of Health & Human Servs.*, No. 98-103V, 2002 WL 229811, at *7 (Fed. Cl. Spec. Mstr. Jan. 30, 2002) ("time spent performing secretarial tasks is to be subsumed in the overhead costs of practicing law and is not reimbursable") (*id*.); *Isom v. Sec'y of Health & Human Servs.*, No. 98-770V, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (refusing to reimburse tasks such as filing and photocopying because they are subsumed under overhead expenses)); (ii) excessive billing for basic tasks, such as reviewing court orders and emails (*Stott v. Sec'y of Health & Human Servs.*, No. 02-192V, 2006 WL 2457404 at *3 (Fed. Cl. Spec. Mstr. July 31, 2006)); (iii) the nearly five hours spent for hours billed to learn about the Vaccine Program (*Anderson*, 2007 WL 4527545, at *2 (citing *Carter v. Sec'y of Health & Human Servs.*, No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2007))); and (iv) several instances of duplicative billing.

[13] Respondent has not objected to these costs, and because I find them reasonable I hereby include them in the award without adjustment.

plus $1,500 in costs. Accordingly, an award shall be made in the form of a check jointly payable to Petitioner and her counsel, Irving Gertel, Esq., in the amount of $**26,169.80.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[14]

    **IT IS SO ORDERED.**

s/Brian H. Corcoran<br>
Brian H. Corcoran<br>
Special Master

---

[14] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.